

FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 13 2024

KEVIN P. WEIMER, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

DWAYNE PETERSON DAVIS

CASE NO. __1 : 2 4 C R – 2 5 7__

## INDICTMENT

The Grand Jury charges that:

### Counts 1 through 10
(Wire Fraud)

1.   From in or about April 2021 through at least in or about August 2021, the Defendant, Dwayne Peterson Davis, aided and abetted by others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts ("the wire fraud scheme").

### Background

2.   At all times material to this Indictment, Government Employees Insurance Company ("GEICO") was the majority owner, and Defendant Davis (through other entities) was the minority owner, of a limited partnership called PIS QOZ Fund 2018-A, LP (the "Partnership").

3.     In or about November 2018, GEICO contributed \$26 million to the

Partnership to fund the Partnership's investment in Riverside Village, a

commercial development in North Augusta, South Carolina.

4.     In or about April 2021, GEICO agreed to contribute another \$5.91 million

to the Partnership to pay taxes, settle a construction lawsuit, and stop

foreclosure proceedings.

### Manner and Means of the Wire Fraud Scheme

5.     Defendant Davis caused and directed GEICO to wire transfer the

\$5.91 million to the Partnership's bank account at UBS Financial Services—

an account that Defendant Davis controlled.

6.     Defendant Davis falsely and fraudulently led GEICO to believe that he

would use the money solely to pay debts and expenses of the Partnership.

7.     In addition, Defendant Davis falsely and fraudulently promised GEICO

that he would confer with GEICO before disbursing any of the \$5.91

million and that he would not make any payments that were not

"directly to the final source."

8.  On or about April 27, 2021, GEICO wire transferred the $5.91 million to the Partnership's account with the understanding that Defendant Davis would use the money solely to pay debts and expenses of the Partnership. GEICO did not authorize Defendant Davis to use the money for any other purpose and would not have transferred the money to his control if it had known that he intended to use it for any other purpose.

9.  After Defendant Davis obtained control of the $5.91 million, he continued to make false and misleading statements to GEICO in an effort to hide his fraudulent intent and to lull GEICO into a false sense of security. Those statements were essential to prevent GEICO from discovering that it had been tricked.

10. For example, upon receipt of the $5.91 million, Defendant Davis promised GEICO that he would not disburse any of the money until he had the "appropriate documentation in place."

11. Almost immediately after that, however, Defendant Davis began siphoning off money from the Partnership's account and secretly transferring it to accounts that he controlled at other banks — accounts that were not related to the Partnership.

12. In all, Defendant Davis surreptitiously transferred $5,898,000 from the Partnership's account to accounts that he controlled at other banks in the name of Peachtree Investment Solutions, LLC. Those transfers served no legitimate Partnership purpose and were made with the intent to defraud GEICO and the Partnership.

13. Defendant Davis eventually used some of the diverted money to pay the taxes owed by the Partnership, but he never made any payments to settle the lawsuit or stop the foreclosure proceedings.

14. In an effort to cover up what he had done, Defendant Davis falsely and fraudulently told GEICO that he still intended to make the payments to settle the lawsuit and stop the foreclosure proceedings. Defendant Davis also assured GEICO that there was enough money left in the Partnership's account to make those payments — even though he knew that was not true.

15. Later, Defendant Davis told GEICO that he had attempted to send a wire transfer from the Partnership's account to stop the foreclosure. That was not true. Defendant Davis further claimed that the bank where the Partnership's account was located had prevented the wire from going through because that bank was conducting a "compliance review" of the Partnership's account. That was not true either.

16.	GEICO asked Defendant Davis to provide proof that he had attempted to send the wire to stop the foreclosure and also asked him to provide the name of the bank officer who had allegedly stopped the wire from going through. Defendant Davis did not—indeed, could not—provide such proof because it did not exist.

17.	In an attempt to justify his failure to provide the information that GEICO had requested, Defendant Davis made up one false excuse after another. First, he blamed an "unexpected family obligation." Then, he claimed that he had been "at church" and unable to respond to GEICO's text messages. And later he claimed that "system issues" at the bank had prevented him from getting the information.

18.	Defendant Davis continued to make false statements to GEICO concerning how much of the $5.91 million was still under his control and where that money was located.

19.	Defendant Davis never returned any of the $5.91 million to GEICO.

## Execution of the Wire Fraud Scheme

20.  On or about each date set forth below, in the Northern District of Georgia

and elsewhere, Defendant DAVIS, aided and abetted by others known and

unknown to the Grand Jury, for the purpose of executing and attempting

to execute the wire fraud scheme, caused to be transmitted by means of

wire communication in interstate commerce the writings, signs, signals,

pictures, and sounds described below:

| Count | Description of Interstate Wire Communication |
|---|---|
| 1 | $5,910,000 wire transfer on April 27, 2021, from GEICO to PIS QOZ Fund 2018-A, LP |
| 2 | $2,000,000 wire transfer on April 29, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 3 | $2,218,000 wire transfer on May 3, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 4 | $400,000 wire transfer on May 14, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 5 | $100,000 wire transfer on May 24, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 6 | $960,000 wire transfer on May 26, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 7 | $210,000 wire transfer on July 9, 2021, from PIS QOZ Fund 2018-A, LP to Peachtree Investment Solutions, LLC |
| 8 | Telephone call on July 30, 2021, between Seth Ingall and Defendant Dwayne Peterson Davis |
| 9 | Telephone call on August 5, 2021, between Jeff Cunningham and Defendant Dwayne Peterson Davis |

| Count | Description of Interstate Wire Communication |
|-------|----------------------------------------------|
| 10 | Telephone call on August 18, 2021, between Jeff Cunningham and Defendant Dwayne Peterson Davis |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

### Counts 11 through 16
(Money Laundering)

21.    The facts alleged in paragraphs 2 through 19 of this Indictment are

reatleged and incorporated here.

22.    Defendant Davis used proceeds from the wire fraud scheme to pay his

personal debts and expenses and to pay expenses related to business

ventures that did not involve the Partnership or GEICO.

23.    On or about each date set forth below, in the Northern District of Georgia

and elsewhere in the United States, the Defendant, Dwayne Peterson

Davis, aided and abetted by others known and unknown to the Grand

Jury, knowingly engaged in and attempted to engage in a monetary

transaction in criminally derived property of a value greater than $10,000,

said property having been derived from specified unlawful activity,

namely, the wire fraud scheme charged in Counts 1 through 10 of this

Indictment:

| Count | Date | Amount & type of monetary transaction | From | To |
|---|---|---|---|---|
| 11 | 05/03/21 | $1,700,000 wire transfer | Peachtree Investment Solutions, LLC (Cadence Bank, account #9501) | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) |
| 12 | 05/04/21 | $1,667,358.90 wire transfer | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) | A person whose initials are J.G.A. |
| 13 | 05/06/21 | $215,000 wire transfer | Peachtree Investment Solutions, LLC (Cadence Bank, account #9501) | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) |
| 14 | 05/17/21 | $18,838.75 wire transfer | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) | McArthur Golf Club |
| 15 | 05/17/21 | $21,700 wire transfer | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) | Consilium Partner Group, LLC |
| 16 | 05/17/21 | $200,000 wire transfer | Peachtree Investment Solutions, LLC (Southern First Bank, account #1782) | WW-TW ENTERPRISES, L.L.C. |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## Forfeiture Provision

24.  Upon conviction of one or more of the offenses alleged in Counts 1
     through 10 of this Indictment, Defendant Dwayne Peterson Davis shall
     forfeit to the United States, pursuant to Title 18, United States Code,
     Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any
     property, real or personal, which constitutes or is derived from proceeds
     traceable to the offense(s), including, but not limited to, a money
     judgment, that is, a sum of money in United States currency, representing
     the amount of proceeds obtained as a result of the offenses alleged in
     Counts 1 through 10 of this Indictment.

25.  Upon conviction of one or more of the offenses alleged in Counts 11
     through 16 of this Indictment, Defendant Dwayne Peterson Davis shall
     forfeit to the United States, pursuant to Title 18, United States Code,
     Section 982(a)(1), all property, real or personal, involved in said violations,
     or any property traceable to such property, including, but not limited to, a
     money judgment, that is, a sum of money in United States currency,
     representing the amount of proceeds obtained as a result of each offense
     for which the Defendant is convicted.

26.    If, as a result of any act or omission of Defendant Davis, any property

subject to forfeiture (a) cannot be located upon the exercise of due

diligence, (b) has been transferred or sold to, or deposited with, a third

party, (c) has been placed beyond the jurisdiction of the Court, (d) has

been substantially diminished in value, or (e) has been commingled with

other property which cannot be divided without difficulty, the United

States intends, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28,

United States Code, Section 2461(c), to seek forfeiture of any other

property of Defendant Davis up to the value of the forfeitable property.

A _____True_____ BILL

FOREPERSON

RYAN K. BUCHANAN
*United States Attorney*

JOHN RUSSELL PHILLIPS
*Assistant United States Attorney*
Georgia Bar No. 576335
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6000
russell.phillips@usdoj.gov